Baldwin *v.* Shaw.

## CHARLES C. P. BALDWIN *v.* JOSEPH W. SHAW.

*Officer.   Sheriff.   Execution.   Replevin.   Deputy Sheriff.*

If, after an officer has levied an execution upon personal property, and advertised it for sale, but before he has sold it, the property be taken out of his hands by replevin, and the officer thereupon returns the execution unsatisfied, stating in his return the facts in relation to the replevin of the property, he is entitled to his fees for travel and for poundage, and may recover the same of the execution creditor in an action of book account.

The fact that, in such case, the levying officer is a sheriff, and that the writ of replevin is served upon him by one of his own deputies, and that such deputy is guilty of official negligence in not returning the replevin writ or bond into court, furnishes no defence, in the nature of failure of consideration, to the sheriff's action for his fees on the levy of the execution. The remedy against the sheriff for his deputy's neglect must be enforced by an action *ex delicto.*

BOOK ACCOUNT.   From the auditor's report it appeared that the first item of the plaintiff's account was for serving a writ, as sheriff, in favor of the defendant against one Low.   The second item was for time spent at the defendant's request, in trying to settle his suit against Low.   No question was made in the supreme court in regard to the propriety of these two items. The third item amounted to $8.19, and was for official fees as sheriff of Orange county in levying an execution in favor of the defendant against Low.

It appeared that such an execution, dated July 12th, 1856, was placed in the plaintiff's hands, on the 27th of that month, by the defendant's attorney, with directions to levy it on a piano, supposed to belong to Low, and worth about seventy-five dollars. The plaintiff accordingly, on the 18th of August, 1856, levied the execution on the piano, and duly advertised it for sale on the execution, on the 1st of September, 1856, at which time he adjourned the sale till the 6th of September, 1856, on which day the piano was taken from the plaintiff upon a replevin writ, in favor of one Prichard, which replevin writ was served by one Bliss, one of the plaintiff's deputies ; and these facts were all duly stated in the plaintiff's return upon the execution, which return also contained the statement that the plaintiff could find no other property to levy upon, and that he therefore returned the

execution unsatisfied. It further appeared that neither the replevin suit nor the replevin bond was ever entered in, or returned to, court. The defendant claimed before the auditor that the plaintiff was derelict in the matter of the defendant's execution and the sale of the piano thereon, and by reason of the neglect of his deputy Bliss to enter the replevin suit in court, and that therefore the plaintiff ought not to recover any portion of the third item in his account. The auditor reported that if the court should be of opinion that the plaintiff had been in default in the discharge of his official duties, and by reason of the neglect of Bliss to return, the replevin writ, the damages thereby resulting to the defendant exceeded the amount of the plaintiff's account.

Upon this report the county court at the January Term, 1861, PECK, J., presiding, rendered judgment for the plaintiff for the amount of the first and second items of his account, and also for $2.07 of the third item, being $1.32 for travel fees in returning the execution to the court, and ninety-six cents poundage on the sum of seventy-five dollars, the value of the piano levied upon.

To this judgment the defendant excepted.

*C. B. Leslie,* for the defendant.

*A. M. Dickey,* for the plaintiff.

POLAND, CH. J. No question is made upon the facts reported, but that the plaintiff's charges for service of the writ against Low, and for his services in trying to effect a settlement of the defendant's suit against Low, were proper, and ought to be allowed to him.

It is claimed that he improperly adjourned the sale of the piano he had advertised, and that therefore he should not be allowed for his fees on the execution.

The auditor's report does not state, why, or for what reason, the sale was adjourned, and we can not; therefore, assume that it was wrongful, or that the defendant thereby, suffered any damage. The ordinary presumption which the law makes in favor of the acts of all men, and especially all acting in an official character, applies.

The property advertised by the plaintiff was taken out of his hands by another officer on a writ of replevin. It has already been decided by this court, (*Shaw* v. *Baldwin*, 33 Vt. 447,) that although that officer was the plaintiff's deputy, and therefore the service defective, so that it might have been pleaded in abatement of that process, still that it was not wholly void, so that the plaintiff was justified in surrendering the property, and not liable for not proceeding to sell it upon the execution. But the defendant claims that the plaintiff, as he did not proceed to sell the property, but returned the execution, stating what he had done under it, and how the property had been taken away from him, is not entitled to charge any fees thereon ; that it is really the same as if he had made a *nulla bona* return on the execution.

Our statute formerly provided that a sheriff or constable should be entitled to no fees for returning an execution *non est*, but I am unable to find that any such provision is now contained in our statute. It may be that without such provision a sheriff would not be entitled to any fees for such return, on the ground that really he had made no service of the precept, but it is not necessary to decide that point. In the present case the plaintiff had proceeded to levy the execution on property, posted it for sale, and once adjourned the sale, when the property was taken away from him by another officer. We think he was as much entitled to fees on the execution, as if the defendant himself had interfered, and countermanded the sale.

The defendant also claims that the plaintiff was not entitled to the poundage or commission given by the statute, because he made no sale of the property, and that this fee must always be taken out of the avails of property sold by the officer, and is never chargeable to the creditor. But this fee is given for *levying the execution*, which was done in this case. Generally of course this is followed by sale, but if, for any reason, for which the officer is not in fault, the sale is prevented, we think the officer does not lose his fees. So where property is sold on an execution, the officer generally deducts from the proceeds of the sale all his fees, and only applies the net proceeds on the execution, but if the creditor employs him to do

the service, and he is prevented from getting his pay from the proceeds of sales on the execution, by no fault of his own, the creditor must pay him. The plaintiff's account then, so far as the same was allowed by the county court, was justly due from the defendant.

But the defendant says, that Bliss, the plaintiff's deputy, was guilty of an official default, in not returning the writ and bond of replevin, and that he suffered loss thereby to a greater amount than the amount of the plaintiff's account against him, and that, as the law makes the plaintiff legally answerable for all his deputy's official defaults, this furnishes a defence to this action. The defendant's counsel claim that this is equiva- lent to proving that the plaintiff's services, which form his account, were really of no value to him, and therefore do not entitle the plaintiff to receive payment.

The authorities produced by the defendant, to show that where services are so improperly and unskilfully performed as to be of no value whatever to the party receiving them, no recovery will be allowed, are unquestionable. The difficulty is, that this is a totally different case. The plaintiff's services were all properly performed, and he was guilty of no neglect or unskilfulness that formed any ground to deprive him of payment. The plaintiff may be liable, as the defendant claims, for his deputy's default, in an independent matter, disconnected wholly with the plaintiff's services. The defendant's claim, and the plaintiff's liability, do not rest at all in contract, and an action to enforce it must be in form an action *ex delicto*. It probably could not have been even pleaded in offset to the plaintiff's debt, and much less can it be set up generally as a failure of consideration. If it be all the defendant claims for it, it is a mere counter claim, sounding in tort.

The judgment is affirmed.